UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA HART,<br><br>        Plaintiff(s),<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>        Defendant(s). | No. C10-3656 BZ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to 42 U.S.C. § 405(g), plaintiff Christina Hart appeals from a final decision by the Commissioner of Social Security which affirmed the Administrative Law Judge's (ALJ) order denying her claim for Social Security disability benefits.[1] See Administrative Record (AR) 14-24. Plaintiff's motion for summary judgment asks me to reverse the ALJ's decision and either award her benefits, or remand this matter for further proceedings before the ALJ. Docket No. 11. Defendant has filed a cross motion for summary judgment

---

[1] The parties have consented to the Court's jurisdiction for all proceedings, including entry of final judgment under 28 U.S.C. § 636(c).

1

arguing that the ALJ's decision should be upheld.  Docket No. 13.  For the reasons explained below, plaintiff's motion is **DENIED** and defendant's motion is **GRANTED**.

Plaintiff's claim for benefits asserted that she had been disabled since December 1, 2005.  Following the standard five-step process for evaluating a Social Security claim,[2] the ALJ first found that plaintiff had not performed substantial gainful activity since the alleged onset date.  At step 2, the ALJ determined that plaintiff suffered from asthma, major depressive disorder, generalized anxiety disorder, and personality disorder.[3]  At step 3, the ALJ found that these impairments did not meet or equal any impairment set out in the Listing of Impairments.[4]  At step 4, the ALJ determined that based on plaintiff's residual functional capacity (RFC), she could perform a full range of work as long as it was limited to simple, routine, and non-social tasks that would not expose her to any pulmonary irritants which could aggravate her asthma problems.  These limitations, however, prevented plaintiff from performing her past relevant work as

---

[2]   See 20 C.F.R. § 404.1520.

[3]   Plaintiff's opening brief only challenges the ALJ's decision about her mental health disorders and does not raise any issues with respect to her physical limitations, such as her asthma problems.  Accordingly, this Order only addresses plaintiff's mental health claims.  See Rudebusch v. Hughes, 313 F.3d 506, 521 (9th Cir. 2002)(refusing to consider arguments that were not raised in the appellant's opening brief).

[4]   The Commissioner has acknowledged that certain impairments are so severe that they preclude substantial gainful activity.  These impairments are set out in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  A claimant whose impairment or combination of impairments meet or equal the "Listings" is presumptively disabled.

2

a restaurant worker, retail sales clerk, or exotic dancer. At the final step, the ALJ concluded that plaintiff was not disabled because, considering her age, education, work experience, RFC, and the testimony of the vocational expert, she was capable of making a successful adjustment to other work available in significant numbers in the economy.

The Commissioner's decision to deny benefits will be disturbed only if it is not supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff first argues that the ALJ did not properly consider the medical opinion of her examining psychologist, Dr. Ede Thomsen. Dr. Thomsen concluded that plaintiff would have difficulty sustaining simple or complex tasks for up to eight hours a day because her depression, anxiety, and personality disorders make it hard for her to pay attention and concentrate. AR 215. Plaintiff contends that because Dr. Thomsen's opinion was not contradicted by any other medical

professional, the ALJ was required to provide "clear and convincing" reasons for rejecting the opinion. <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1996). Even assuming that this is the applicable standard,[5] plaintiff's argument still fails because the ALJ did identify several persuasive reasons for discounting Dr. Thomsen's opinion.

First, the ALJ noted that Dr. Thomsen never treated plaintiff and only examined her once.[6] AR 21. This examination was conducted less than one month before the administrative hearing and over four years after plaintiff's alleged onset date.[7] AR 21. When determining how much weight to give to a medical opinion, the ALJ is permitted to take into account the length, nature, and extent of the claimant's relationship to the doctor. <u>See</u> 20 C.F.R. § 404.1527(d)(contrary to plaintiff's argument, the ALJ may consider such factors when evaluating all medical opinions and not just when determining whether a doctor is a treating or non-treating source); <u>see</u> <u>also</u> <u>Lester</u>, 81 F.3d at 832 (noting that an ALJ may "give less weight" to a medical opinion if the doctor's evaluation is based on only a "limited observation"

---

[5] Defendant argues that the ALJ was only required to provide "specific and legitimate reasons" for not adopting Dr. Thomsen's opinion because her findings contradicted the views of state psychiatrists who had previously reviewed plaintiff's medical file. <u>See</u> <u>Lester</u>, 81 F.3d at 830-31.

[6] Because Dr. Thomsen did not have an ongoing treatment relationship with plaintiff, her medical opinion was not entitled to controlling weight. <u>See</u> Social Security Ruling (SSR) 96-2p.

[7] The ALJ was also troubled by plaintiff's submission of "minimal evidence of ongoing mental health treatment," noting that plaintiff failed to attend scheduled psychiatric or psychological examinations.

4

of the claimant). Accordingly, it was permissible for the ALJ to give less weight to Dr. Thomsen's opinion due to the limited nature of her relationship with plaintiff.

Second, the ALJ was not persuaded by Dr. Thomsen's opinion because the tests she administered revealed that plaintiff's functional limitations were not severe. See AR 21. Dr. Thomsen concluded that plaintiff's symptoms were so debilitating that she could not "effectively manage her daily affairs" and would have "difficulty sustaining simple or complex tasks" for an entire work day. AR 21; 215. The results of Dr. Thomsen's functional tests, however, did not support this conclusion. Rather, the tests showed that plaintiff's (1) intellectual, language, and visual/spatial abilities were normal; (2) concentration and sensory/motor abilities were only mildly impaired; and (3) executive and memory functioning were moderately impaired. AR 20-21; 209-211. Plaintiff argues that there were individual functional tests, which were subparts of the tests from the above categories, where her performance was below average (e.g., the clock drawing test, the delayed memory index, and the attention index). But even considering these individual tests, plaintiff's overall capacity in the above categories was at worst "moderately limited" in just two areas and there were no severe functional problems in any one category. Id. Dr. Thomsen never connected her diagnosis that plaintiff was incapable of performing simple tasks for an entire work day with any results from plaintiff's functional tests, which corroborates the ALJ's conclusion that the opinion was not

fully supported by Dr. Thomsen's own objective findings. The ALJ's decision to discount Dr. Thomsen's opinion for this reason was therefore not improper. See Bourbon v. Barnhart, 2002 WL 31855298 at *6 (N.D. Cal. 2002)(holding that the ALJ articulated sufficient reasons for rejecting the examining psychologist's opinion because the doctor's conclusion that claimant could not concentrate and complete tasks was inconsistent with the doctor's own findings that claimant had no problem performing simple repetitive tasks and his intellectual functioning was average); see also 20 C.F.R. § 404.1527(d)(3) ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion").[8]

The ALJ further discounted Dr. Thomsen's opinion because plaintiff's physical and mental capabilities were inconsistent with both Dr. Thomsen's findings and conclusions as well as plaintiff's own statements. AR 20. Plaintiff claimed that she could not focus and would rarely complete tasks. See AR 44, 48, 163-64. Dr. Thomsen corroborated this by concluding that plaintiff could not manage "daily tasks and affairs due

---

[8] Plaintiff correctly points out that the emotional functioning tests administered by Dr. Thomsen showed that plaintiff was suffering from depression. AR 211-14. But being depressed does not make one disabled for Social Security purposes. The depression must be to a degree that prevents a claimant from working. The ALJ did not believe that plaintiff's level of depression prohibited her from doing all work, as exhibited by the results of the functional tests which showed that she was not severely limited in her capabilities.

6

to her symptoms." AR 215.[9] Plaintiff, however, admitted during the hearing and in her application for benefits that she is able to manage activities, such as (1) cooking; (2) shopping; (3) managing money; and (4) performing household chores, including mopping, vacuuming, washing dishes, and doing laundry. AR 20, 51-52, 209, 334. Plaintiff also testified that she was planning to get her driver's license; and enjoyed beading and making jewelry. See AR 20, 50-51, 334. While Dr. Thomsen stressed that plaintiff had difficulty interacting with people, the ALJ noted that plaintiff did not have any issues with presenting herself in a professional manner and completing the battery of tests administered by Dr. Thomsen. AR 20; 215. Accordingly, Dr. Thomsen's opinion that plaintiff was incapable of performing simple tasks for an entire work day was not supported by the evidence of plaintiff's functional capabilities. See Bourbon, 2002 WL 31855298 at *6 (finding it permissible for the ALJ to consider claimant's daily activities when discounting the examining psychologists' conclusions). Based on this and the other "clear and convincing" reasons provided by the ALJ, I find that his decision to discount Dr. Thomsen's opinion was not in error.

    Plaintiff next challenges the ALJ's finding that she was not credible. When there is no evidence of malingering, such as in this matter, the ALJ is required to provide "clear and

---

[9] This was Dr. Thomsen's conclusion even though she had noted earlier in her opinion that plaintiff had "reported that she can manage most of her activities of daily living." AR 209.

1 convincing" reasons for rejecting plaintiff's testimony.
2 Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir.
3 2001)(citing Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.
4 1998)). The ALJ must specifically identify the testimony he
5 found to lack credibility and explain what evidence undermines
6 it. Id. In weighing plaintiff's credibility, the ALJ may
7 consider her "reputation for truthfulness, inconsistencies
8 either in [plaintiff's] testimony or between her testimony and
9 her conduct, [plaintiff's] daily activities, her work record,
10 and testimony from physicians and third parties concerning the
11 nature, severity, and effect of the symptoms of which
12 [plaintiff] complains." Thomas, 278 F.3d at 959 (quoting
13 Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir.
14 1997)); see also 20 C.F.R. § 404.1529.

15 Contrary to plaintiff's argument, the ALJ sufficiently
16 explained his reasons for concluding that plaintiff was being
17 untruthful and exaggerating the extent of her symptoms. For
18 instance, the ALJ noted that plaintiff's application claimed
19 that she had been sober since 2004. AR 21; 253. At the
20 hearing, plaintiff testified that she used heroin on one
21 occasion in 2005 after her fiancé died, but she had otherwise
22 remained sober. AR 54, 62-63. Plaintiff, however, admitted
23 to Dr. Thomsen in 2009 that she used heroin in the past
24 year.[10] AR 21; AR 208. Plaintiff's inconsistent and
25 potentially deceptive statements about her heroin use
26 constituted a sufficient reason for the ALJ to discredit her

---

[10] Plaintiff told Dr. Brimmer during a medical examination in September 2007 that she had been clean for a few years except for a few "slip-ups." AR 334.

8

testimony, including her reports of having severely limited functional capabilities. See, e.g., Thomas, 278 F.3d at 959 (holding that it was permissible for the ALJ to have inferred that claimant's conflicting statements and "lack of candor" about her drug and alcohol use "carrie[d] over to her description of physical pain" and constituted a clear and convincing reason for discrediting her testimony); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).[11]

The ALJ was also troubled that plaintiff's testimony about her functional capabilities was inconsistent and lacked evidentiary support. When the ALJ asked her what types of things she did to "pass the day," she replied that she had "trouble focusing" and did not "do a whole lot," later adding that it was particularly hard for her to interact with other people. AR 44; 48. Plaintiff testified that her depression affected her concentration and she could not "sit down and read a paragraph and get the gist of the paragraph [from] the beginning to the end." AR 43. Once again, this testimony was inconsistent with plaintiff's explanation of her actual capabilities and the other evidence in the record. Plaintiff conceded that she was able to manage her daily activities, including shopping, cleaning, and performing household chores. She was also able to present herself properly and complete an

---

[11] In addition, the ALJ found that plaintiff was not credible because she exaggerated the extent of her asthma problems. See AR 20 ("Nor has she submitted evidence to show that her asthma affects her ability to perform activities of daily living").

9

examination with Dr. Thomsen.[12] Based on the inconsistencies in plaintiff's testimony and between plaintiff's "testimony and her conduct," the ALJ made the determination —— in accordance with his responsibility to assess credibility —— that plaintiff lacked credibility and was exaggerating her symptoms. See Thomas, 278 F.3d at 959.

Plaintiff argues that the ALJ's consideration of her daily activities, which did not consume a substantial part of her day, was improper because a claimant is not required to be "utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)(citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)(The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability")). This argument is misplaced. The ALJ did not discredit plaintiff's testimony because he believed she performed certain daily activities for a substantial part of the day. Instead, the ALJ concluded that plaintiff was not telling the truth because her testimony was inconsistent or conflicted with other parts of the record (e.g., plaintiff testified at the hearing that she could barely do anything, but conceded that she was able to shop, cook, and clean for

---

[12] In 2007, nearly two years after plaintiff's alleged onset date, she told Dr. Brimmer during a medical examination that she "can do housework such as cooking, dishes, mopping, vacuuming, and laundry unless her asthma is bad. Her hobbies include beading and making jewelry. She likes to play with her dog. She writes in her journal and reads." AR 334.

1 herself; plaintiff testified that she had trouble reading one
2 paragraph, but this had little to no support in the record and
3 was contradicted by her statement to Dr. Brimmer that she
4 enjoyed writing in her journal and reading). Essentially, the
5 ALJ credited plaintiff's testimony that she was suffering from
6 depression and had some limitations. But due to her
7 conflicting testimony which he found to be untrustworthy at
8 times, the ALJ concluded that she was exaggerating and was
9 capable of working pursuant to the limitations set out in her
10 RFC. See AR 18 ("I find that the Claimant's medically
11 determinable impairments could reasonably be expected to cause
12 the alleged symptoms; however, the Claimant's statements
13 concerning the intensity, persistence and limiting effects of
14 these symptoms are not credible to the extent they are
15 inconsistent with [her RFC] assessment"). This was
16 permissible and it amounted to a clear and convincing reason
17 for discounting plaintiff's testimony. See SSR 96-7p ("The
18 [ALJ] may also find an individual's statements, such as
19 statements about the extent of functional limitations or
20 restrictions due to pain or other symptoms, to be credible to
21 a certain degree...; i.e., that the individual's abilities to
22 lift and carry are compromised, but not to the degree
23 alleged").
24   Plaintiff's third argument is that the ALJ's decision is
25 not supported by substantial evidence, particularly with
26 respect to his RFC determination. But, as explained above,
27 the ALJ considered plaintiff's evidence and arguments in
28 support of her claim that her depression was debilitating.

1   After evaluating the medical opinions and plaintiff's
2   testimony, the ALJ concluded that this evidence did not
3   support her claim.  The ALJ specifically explained why he was
4   discrediting plaintiff and not adopting Dr. Thomsen's opinion.
5   He found that plaintiff had trouble concentrating and
6   interacting with other people due to her mental health
7   problems, but these limits did not severely affect her
8   functional capabilities.  The ALJ took into account
9   plaintiff's limitations and determined that her RFC only
10  permitted her to perform simple, routine tasks which involved
11  minimal social interaction.  Even with this limited RFC, the
12  vocational expert identified a significant number of jobs in
13  the economy that would be available to plaintiff.  There is
14  "more than a mere scintilla" of evidence to support this RFC
15  determination by the ALJ, such as evidence that plaintiff was
16  able to manage her daily activities and interact with people
17  (i.e., doctors and psychiatrists) when necessary.  See
18  Bayliss, 427 F.3d at 1214.  "Where the evidence is susceptible
19  to more than one rational interpretation, one of which
20  supports the ALJ's decision, the ALJ's conclusion must be
21  upheld."  Thomas, 278 F.3d at 954.  Here, there was
22  substantial evidence to support the ALJ's decision, and I will
23  not second-guess his findings based on the record before me.[13]

---

[13] I am not persuaded by plaintiff's argument that the ALJ should have had Dr. Thomsen testify about the discrepancies in her testing results and ultimate conclusions. Motion at 13 (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)(the ALJ should know the basis of an examining physician's opinion and has a "duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them")). The ALJ was only required to further develop the record if it was inadequate or the evidence was

1    For the foregoing reasons, I find that the ALJ provided
2 clear and convincing reasons for discounting Dr. Thomsen's
3 opinion and finding that plaintiff was exaggerating her
4 inability to work.  The ALJ's decision to deny plaintiff
5 benefits is supported by substantial evidence and there is no
6 need to remand for further administrative proceedings.  **IT IS**
7 **THEREFORE ORDERED** that plaintiff's motion for summary judgment
8 is **DENIED** and defendant's cross motion is **GRANTED.**
9 Dated: September 26, 2011

                              _____
                                    Bernard Zimmerman
                              United States Magistrate Judge

G:\BZALL\-BZCASES\HART V. ASTRUE\ORDER RE CROSS MOTIONS 2.wpd

---

ambiguous.  See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).  That was not the case here as the ALJ believed he could properly evaluate Dr. Thomsen's opinion since it was not ambiguous.

13